[No. 14370. *En Banc.* May 10, 1918.]

GREAT NORTHERN RAILWAY COMPANY, *Plaintiff*, v. THE STATE OF WASHINGTON, *Defendant*.[1]

EMINENT DOMAIN—DAMAGING PROPERTY—LIABILITY OF STATE. Under Const., art. 1, § 16, forbidding the taking of private property without just compensation, the state is liable if, in building a state highway without negligence without having condemned the right, it was necessary to blast out and dump rock and material upon a railroad track to its damage.

SAME—LIABILITY OF STATE—NATURE. In the taking or damaging of private property for public use without negligence, the state acts in its sovereign capacity, and failure to condemn the right is no excuse for denying the state's liability for the damage done, as it is not a trespasser or tort feasor.

SAME—LIABILITY OF STATE—ACTS OF CONTRACTORS OR OFFICERS. Where such damage was done by direction of the state, it is liable as the superior, although it does the work by contract or by direction of its duly authorized officers.

SAME—LIABILITY OF STATE—INJURIES NOT ANTICIPATED. The state would be liable for such damages necessarily resulting from the construction of a highway, although they were not anticipated or contemplated in the plan of construction.

SAME—LIABILITY OF STATE—INSTRUCTIONS. In such case, where it is admitted that all the work was carefully done, it is error to give an instruction leaving to the jury whether any damage resulted from negligent acts.

SAME—LIABILITY OF STATE—BLASTING. If blasting is necessary in the construction of a highway by the state, in its sovereign capacity,

'Reported in 173 Pac. 40.

the act is not tortious and the state is liable for the injuries inflicted.

SAME—LIABILITY OF STATE—DAMAGES. Where the state in building a highway injures a railroad by blasting and dumping rock upon the track, it is liable for the increased expense incurred in operating trains and time consumed in making repairs and labor and supplies on account of delays, as a deprivation of the use of its property, as though it had been physically taken.

SAME—LIABILITY OF STATE—DAMAGES—OFFSET OF BENEFITS. If a railroad company, damaged by the building of a state highway, was benefited in a special degree, the state may offset any benefits that may be ascertained with reasonable definiteness, under Const., art. 1, § 16, providing that no right of way shall be appropriated to the use of any corporation "other than municipal" until full compensation is paid, irrespective of any benefit from the improvement.

SAME—LIABILITY OF STATE—DAMAGES—EVIDENCE. In an action for damages to a railroad track through the blasting for a state highway, it is error to allow the contractor to testify that the company refused to allow him to take up the rails before setting off blasts, and that the same would have avoided the damage, there having been no condemnation, as temporary removal interfered with the owner's use.

Cross-appeals from a judgment of the superior court for Thurston county, D. F. Wright, J., entered December 16, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to property through the construction of a state highway. Reversed on plaintiff's appeal.

*F. V. Brown* and *F. G. Dorety,* for plaintiff.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for defendant.

HOLCOMB, J.—Plaintiff brought this action under the constitutional provision to recover compensation for damage done by the state to plaintiff's track, which resulted from the construction of a state highway. The damage complained of occurred along a stretch of two miles at the base of Chuckanut mountain, a few miles south of Bellingham. The railroad track is located

along the shore at the base of the mountain, and the waterfront road of the Pacific highway, which was constructed by the state in 1914, 1915 and 1916, was built upon the hillside approximately parallel with and from 125 to 175 feet above the railroad track. The hillside consists of a thin layer of top soil over a foundation of solid rock. On account of the steepness of the bluff it was necessary to blast out a shelf for the highway and to dump material on the hillside and railroad track below. This caused slides, obstructed the track, bent rails, damaged ties, poles and wires, and delayed trains, for which plaintiff claims an expenditure of $16,715.53, and an estimated sum of $25,000 to protect against imminent danger of further damage from slides caused by deposits and impaired drainage. Every effort was made to avoid unnecessary damage. Extra rails and ties were provided in advance, flagmen were stationed at the danger zones, a special telephone was installed, and the contractor's men employed upon the state highway always helped to clear the track, working in company with the railway section crew. Notwithstanding these precautions, the plaintiff, in two years during the construction of the highway, was forced to expend $15,576.80 in replacing the rails and equipment, removing slides and debris, paying train crews during periods of delay, providing flagmen, etc. Of this sum, bills amounting to $1,139.22 were paid by the state. A written stipulation was filed covering the amount of expenditures, to which was attached itemized bills showing the amounts claimed for train delays, labor, rental of equipment, and other items. It was stipulated that these items were actually expended in connection with material which fell upon the railroad track, but it was denied that the falling of the material upon the track was caused by the highway construction or that the state was responsible therefor.

The state's demurrer to the complaint and motion for judgment *non obstante veredicto* were overruled, and the state has cross-appealed from the orders overruling the demurrer and denying its motion for judgment *non obstante veredicto*. A verdict was returned in favor of the plaintiff in the sum of $7,391.34. The plaintiff moved for new trial on the ground of errors in instructions and in admission of evidence, which motion was denied and judgment entered on the verdict. Plaintiff appeals from the judgment and order denying a new trial.

The plaintiff's theory is that, in inflicting the damage, the state acted in its sovereign capacity, that it was necessary for the accomplishment of a public object, and that plaintiff is entitled to just compensation under Const., art. 1, § 16. The fact that the state did not condemn plaintiff's property in advance does not absolve it from liability where no negligence is charged in the performance of a governmental duty. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820.

The constitutional provisions must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is fundamentally the right of user, including, of course, the corresponding right of excluding others from the use. A physical interference with the land which substantially obstructs this right takes the plaintiff's property to just so great an extent as it is thereby deprived of its right. To deprive one of the use of his property is depriving him of his property, and the private injury is thereby as completely effected as if the property itself were physically taken. Accordingly it has been held that any use of land for a public purpose which inflicts an injury upon adjacent land such as would have been actionable if caused by a private owner is a taking and damaging within the meaning of

the constitution. *Nevins v. City of Peoria,* 41 Ill. 502, 89 Am. Dec. 392, lays down the principle with which we are in accord:

"Neither state nor municipal government can take private property for public use without due compensation, and this benign provision of our constitution is to be applied by the courts whenever the property of the citizen is invaded, and without reference to the degree. The same law that protects my right of property against invasion by private individuals, must protect it from similar aggression on the part of municipal corporations. A city may elevate or depress its streets, as it thinks proper; but if, in so doing, it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, upon what ground of reason can it be insisted, that the city should be excused from paying for the injuries it has directly wrought? It is said that the city must grade streets and direct the flow of waters as best it can for the interest of the public. Undoubtedly, but if the public interest requires that the lot of an individual shall be rendered unfit for occupancy, either wholly or in part, in this process of grading, or drainage, why should not the public pay for it to the extent to which it deprives the owner of its legitimate use? Why does not the constitutional provision apply as well to secure the payment for property partially taken for the use or convenience of a street as when wholly taken and converted into a street? Surely the question of the degree to which property is taken can make no difference in the application of the principle. To the extent to which the owner is deprived of its legitimate use and as its value is impaired, to that extent he should be paid."

It is contended by the state that a suit against it to recover for damages will not lie, and that the damage herein involved is not for a public use within the meaning of the constitutional provision requiring compensation. We cannot accede to this contention; for if the state could have condemned the right to inflict the

necessary damage or invade plaintiff's property, its failure to so condemn is not an excuse to deny plaintiff's recovery. *Kincaid v. Seattle, supra; Provident Trust Co. v. Spokane,* 75 Wash. 217, 134 Pac. 927, Ann. Cas. 1915C 63.

When taking private property for a public use, the state acts in its sovereign capacity. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68. It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong, and presumptively for the public good. Under the statute, it cannot put on the cloak of a tort feasor if it would. It cannot plead a wilful wrong to defeat a just claim. The action for damages for land taken without compensation is usually spoken of and is in its nature one of trespass, but it is not strictly so. If the state or its agent, in the prosecution of a public work, takes no more than is necessary and prosecutes its work without negligence it is neither a trespasser nor a tort feasor. *Kincaid v. Seattle, supra.* If we should hold that the state cannot condemn the right to inflict the necessary damage in the prosecution of a public work it, in effect, would hold that the officers and contractors of the state could be enjoined from committing the damage.

While the work was in progress, the plaintiff attempted to enjoin the contractor from inflicting the damage. The court said:

"To hold to the contention of complainant [*i. e.,* to grant the injunction] would render the state impotent in this enterprise and destroy a large public work of public necessity." *Great Northern R. Co. v. Quigg,* 213 Fed. 873, 879.

In our opinion, the theory that property rights are ever to be sacrificed to public convenience or neces-

sity without just compensation is fraught with danger, and should find no lodgment in American jurisprudence. If the acts which caused the injury were done under, and in consequence of, the direction of the state, then the state is to be regarded as the superior and responsible as such, although it does the work by contract and by the direction of its duly authorized officers. The plaintiff's complaint states a cause of action under art. 1, § 16, of our constitution, and the state's demurrer was properly overruled. There is no merit in the state's assignment of error in denying its motion *non obstante veredicto*. This brings us to plaintiff's assignment of errors.

I. Plaintiff assigns error in the court's instruction No. 12. It, being contrary to the view we have above expressed, is clearly erroneous.

II and III. It is contended by plaintiff that all of the last paragraph of instruction No. 9 is erroneous, but we think the same is correct, excepting that portion which reads:

"But the state is not liable for any damage to the plaintiff, if you find that any damages were so sustained, which were not anticipated in or contemplated in the plan of the construction of the highway referred to in the complaint, and if you find that any damage has resulted to the plaintiff which was not contemplated by the plan of the construction of the highway such damage may not be considered by you in arriving at your verdict."

That portion of the instruction is contrary to the view we have expressed herein and if the same is supplanted by that portion of plaintiff's third requested instruction, or an instruction of similar import., it would express the law as we have determined. That portion of plaintiff's third requested instruction to which we refer reads as follows:

"If, in addition to the foregoing facts which are admitted, you should find that the plaintiff's railway has been or will be physically damaged by the casting or sliding of earth or rock upon it as a necessary result of such construction of the state highway, or as a necessary result of any work of highway construction performed in a manner directed by the state officials in charge, or in a manner necessary to, and reasonably to be expected in, every practicable, known and practiced engineering method of constructing such highway, your verdict should then be for the plaintiff, and for all of such damage you should award compensation for the plaintiff."

IV. That portion of instruction No. 13 reading as follows:

"And if you find that, in constructing said highway, any contractor or employee of the state left loose rocks or material upon said hillside which could have been removed, but which, having been left on said hillside, caused damage to the plaintiff, and if you find that such material was negligently left on said hillside, then the state is not liable for any damage which may have resulted from such negligent acts,"

is erroneous, for it leaves the jury to determine whether or not the material was negligently placed, when there is no evidence of negligence, it having been admitted that every portion of the work was done in a prudent and cautious manner.

V. Instruction No. 11 is erroneous under the rule announced in *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086, and *Patrick v. Smith*, 75 Wash. 407, 134 Pac. 1076, 48 L. R. A. (N. S.) 740. In the latter case, the court said:

"The authorities are agreed upon the question that one who, in blasting upon his premises, casts debris upon the land of another is liable in damages, regardless of the degree of care or skill used in doing the work. 19 Cyc. 7."

If blasting is necessary in the construction of a highway, and damages cannot be avoided, the state may inflict it by virtue of its sovereign right, but it must respond in damages, as it cannot be considered as tortious.

VI and VII. The court erred in failing and refusing to give that portion of plaintiff's sixth requested instruction, or an instruction of similar import, which is:

"You should also include in such verdict any increased expense which has been or will be incurred by the plaintiff in operating said railway during the time necessarily consumed in making such repairs, such as additional labor and supplies used on account of trains delayed or annulled as a result of any damage to the said railway, for which the state is liable under said instructions."

Our views as heretofore expressed, explicitly point to the theory that plaintiff may recover for deprivation of the use of his property as though it was physically taken. Therefore instruction No. 10 is clearly erroneous.

VIII. Plaintiff contends that the court erred in giving its instruction No. 14 relating to the setting off of benefits. The constitution, art. 1, § 16, provides:

"And no right of way shall be appropriated to the use of any corporation *other than municipal* until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation."

We find no constitutional provision similar to ours. Municipal corporations are permitted to offset benefits from condemnation damages when taking and damaging land for public uses. *Spokane v. Thompson,* 69 Wash. 650, 126 Pac. 47. The word "municipal" cannot be construed strictly, but was intended to distinguish public political bodies from corporations of a quasi

public nature. If the building of the state highway benefited the railroad property in a special degree, and such benefit could be ascertained with reasonable definiteness and not merely speculatively, we think that that benefit should be set off against the damages, injury and inconvenience caused by the building of the highway in a proper and careful manner. The instruction was properly given.

IX. Plaintiff contends that the court erred in admitting testimony that the Great Northern had refused to allow the contractor to take up its rails from time to time before setting off blasts, and in denying plaintiff's motion to strike all of that testimony. It cannot be said that the testimony of the contractor that he requested plaintiff to take up and replace the rails of its track each time a blast was to be exploded, and that he could have avoided practically all of the damage if his request had been granted, is proper. The state had made no arrangements in advance, nor had it condemned the property. The rails were a part of a continuously operated property, fixed in place for use, and a part of as necessary a public use as the state's highway itself, and were there first. Surely the railway company could not be made to take up its track without condemnation. The contractor could not remove them temporarily without interfering with the use of the railway by its owner. This evidence should not have been admitted, and the denial of plaintiff's motion to strike it was erroneous.

For the errors herein indicated, the cause is reversed on plaintiff's appeal and remanded for new trial.

ELLIS, C. J., MOUNT, MAIN, PARKER, WEBSTER, FULLERTON, and CHADWICK, JJ., concur.