[No. 27250.   Department One.   April 6, 1939.]

THE STATE OF WASHINGTON, *on the Relation of R. L. Price et al., Appellants,* v. I. T. PETERSON *et al., Respondents.*[1]

[1]Reported in 88 P. (2d) 842.

*Brown & Weller,* for appellants.

*F. Leo Grinstead, The Attorney General* and *Harry L. Parr, Assistant,* for respondents.

JEFFERS, J.—This is an appeal by relators, R. L. Price and W. H. Hoeft, copartners doing business under the firm name of Statesman Index Company, J. H. Collins and Catharine Collins, his wife, from a judgment dismissing relators' complaint for a writ of mandamus, after a demurrer interposed to the complaint by defendants I. T. Peterson, P. H. Graham and Charles Waitt, as county commissioners of Stevens County, had been sustained and a motion to dismiss as to defendant J. H. Whiting had been granted.

Appellants make the following assignments of error: (1) The court erred in sustaining the demurrer to appellants' complaint; (2) the court erred in entering a judgment of dismissal.

Appellants are citizens of the state of Washington, and residents and large property holders and taxpayers of Stevens county. Appellants Collins and wife are the record owners of property in Colville which goes to make up the property of the Statesman Index Company, a newspaper of general circulation. This property has been sold on contract to appellants Price and Hoeft.

Appellants Price and Hoeft, as the editors and publishers of the newspaper, for a public purpose, desire to inspect the records of administrator Whiting and

the board, and publish in their paper a true and fair statement of public money expended by respondents, but appellants have been, by respondents, denied access to such records.

By virtue of the act creating the state department of social security, there has been created, and now exists, in each county of the state, a fund for public assistance, which fund is under the control of the board of county commissioners and the administrator of public assistance. For the purpose of creating and maintaining this fund, the county commissioners annually levy and collect a three mill tax. Such a levy was made in 1938, and the money collected therefrom, together with other money furnished by state and Federal governments, is being used by respondents, all to be allocated and used according to the terms of the act. The county commissioners constitute the single administrative agency in Stevens county through which all the public assistance in the county is administered, subject to the terms of the act, and the responsibility with the state is joint and several.

The complaint further alleges that the fund under the control of respondents is being managed and expended in a wanton and needless manner, wrongfully and unlawfully, and that respondents are acting in excess of the authority conferred upon them by law. It is further alleged that the administrator is making expenditures to various persons not properly on relief; that the amount of such payments and the true names of the recipients of such aid are unknown to appellants; that appellants are entitled to examine the records of respondents, in order to determine the amount of money wrongfully paid out by the administrator to various persons; and that appellants have been denied any information concerning such records and the disbursement of the fund.

The prayer of the complaint is for an alternative writ of mandate, after which a peremptory writ shall issue to respondents, directing them to allow appellants the right to inspect all of respondents' books and records pertaining to the administration of the social security act. The prayer further demands that the records and accounts be impounded; that respondents be enjoined from making any unlawful or wrongful disbursements of the fund; and that they be enjoined from altering or removing any of their books or records.

Counsel for both appellants and respondents seem to assume in their briefs that a certain rule and regulation, claimed to have been imposed upon respondents by the director of social security in regard to "confidential information," is in the record before this court, but we do not think this is true. The matter came before the court for argument on the demurrer of respondents, and the motion to dismiss as to respondent Whiting. The judgment recites the demurrer was sustained and the action dismissed. We are not, therefore, considering the effect of the particular rule or regulation hereinbefore referred to.

We must turn to the statute to see what powers and duties the respondents have herein. Laws of 1937, chapter 111, p. 442 (Rem. Rev. Stat. (Sup.), §§ 10760-2, 10785-1 *et seq.* [P. C. § 6233-21 *et seq.*]), created a department of state government, to be known as the department of social security, the chief executive officer thereof to be designated as "director," and to be appointed by the governor, with the consent of the senate. The department is divided into six divisions, one of which is the division of public assistance. The director is given general charge and supervision of the department, and is given authority, with the approval of the governor, to make such rules and regu-

lations as may be necessary to carry out the powers and duties of his department.

The administration of the division of public assistance by the department of social security is governed by Laws of 1937, chapter 180, § 1, p. 697 (Rem. Rev. Stat. (Sup.), § 10007-101 [P. C. § 6233-201]), wherein the purpose is declared to be

". . . to establish a single administrative agency which will preserve local autonomy in its administration yet retain the state-wide supervision necessary to equity, uniformity, and the adherence to rules and regulations of the Federal government. . . ."

Pursuant to this declaration, provision is made in § 2, p. 698 (Rem. Rev. Stat. (Sup.), § 10007-102 [P. C. § 6233-202]), for the executive head of the department, to be designated as director; an "administrative board," to be composed of the county commissioners in each county; and an "administrator," being the person appointed by the county commissioners to administer public assistance in each county. This section also provides:

" 'Public Assistance' means Federal, state and county aid for the assistance of certain individuals of the state as set forth in this act."

Section 3, p. 699 (Rem. Rev. Stat. (Sup.), § 10007-103 [P. C. § 6233-203]), provides that public assistance, in every form now being administered, and in such form as may hereafter be defined as a public charge, is declared to be the several and joint responsibility of the state and the political subdivisions thereof, subject to such restrictions and limitations as hereinafter provided.

By § 6, p. 701 (Rem. Rev. Stat. (Sup.), § 10007-106 [P. C. § 6233-206]), the state department of social security is empowered to serve as the single state agency in the administration of all public assistance programs

originating under the jurisdiction of the Federal government, to fix uniform standards for all public assistance, and to effect uniform observance of such standards throughout the state, provided that such standards shall be in conformity with the Federal social security act and the laws of the state pertaining to public assistance. By the same section, the director is empowered

". . . to exercise such other and further supervision of all public assistance activities as may reasonably seem necessary to effective administration of this act,"

and the duty is imposed upon him

". . . to examine and approve quarterly budgets submitted by the respective boards of county commissioners, and to budget such funds as may be deemed necessary to the administration of this act: . . ."

Section 7, p. 702 (Rem. Rev. Stat. (Sup.), § 10007-107 [P. C. § 6233-207]), provides that each board of county commissioners shall serve as an administrative board for all matters relating to public assistance in their respective counties, and as such shall

". . . prepare quarterly in advance a budget adequate to provide to the inhabitants of that county the benefits and services of public assistance under the provisions of this act: . . ."

The section further provides that the board

". . . is hereby empowered to act in such capacity as agents of the State Department of Social Security, subject to such regulations and restrictions as are herein authorized and shall exercise complete jurisdiction within such regulations for state and Federal funds expended for public assistance under this act in the respective counties."

Section 8, p. 703 (Rem. Rev. Stat. (Sup.), § 10007-108 [P. C. § 6233-208]), provides for the appointment by

the county commissioners of an officer who shall be responsible to the board, and who shall keep such records and prepare such reports as the county commissioners deem necessary to the preparation of the quarterly budget estimates and any other data held by the department as necessary to the administration of the act.

Section 17, p. 707 (Rem. Rev. Stat. (Sup.), § 10007-117 [P. C. § 6233-217]), provides that the county commissioners shall budget and levy a sum equal to three mills against the assessed valuation of the county for public assistance for 1938 and subsequent years, which shall be expended in accordance with the provisions of this act, and in the manner prescribed by law for the disbursement of the county current expense fund.

It is impossible, after reading this act, to escape the conclusion that respondent commissioners, as agent of the director, and the administrator, as agent of the commissioners, are state officers, when acting pursuant to the terms of the act. It is also apparent that the director has supervision and control of the entire administration of the act within the state, and may promulgate rules and regulations relating to such administration. While the commissioners make up the budgets in their respective counties, they are certified to the director, to be approved by him. As evidence of the powers given the department, it is provided in the act that no person shall be eligible for appointment as administrator until he has presented a certificate of eligibility issued by the department. Thus it will be seen that, while the commissioners are given authority to appoint, the department practically has the power to say who shall be appointed.

With this situation in mind, let us examine the complaint in this case. It is alleged in general language that respondents are acting unlawfully and be-

yond their authority in the expenditure of funds, and in refusing to allow appellants to examine all their records, in order that appellants may determine what sums have been unlawfully paid, and to whom paid. Appellants also contend that respondents' records are public records, and as such should be open to the inspection of appellants. There is no provision in the act itself for making or filing any particular record, but the act merely provides that the administrator shall keep such records and prepare such reports as the commissioners or the director may require. Neither is there anything in the act declaring that whatever records are kept shall be public records and open to the inspection of the public. We do not think it follows that, because one is a public officer, all records and reports of such officer are public records, which the public is entitled to inspect.

It seems to us this is an attempt to gain certain information from records which are, in fact, state records, and to enjoin the operations of certain state officers in their investigations and expenditure of funds obtained for disbursement under the social security act; and in our opinion, before this could be done, it would be necessary to make the director a party to the action. Respondents, in administering public assistance, are, under the statute, agents of the director, and, we think it fair to assume, acting under his direction.

It should be kept in mind that appellants are not questioning the constitutionality of the social security act, but are claiming that respondents are proceeding unlawfully in the expenditure of public funds, and unlawfully refuse to allow appellants access to all their records.

In view of the situation presented, we think the di-

rector must be made a party to the action before there can be a determination of the questions involved.

In 46 C. J. 1063, we find the following rule announced:

"Where an officer is charged, under a statute, with duties which he may and does execute by means of deputies, the courts will not review the conduct of the deputies in the absence, as a party, of the superior for whom they have acted, and the rule applies in case of the acts of their agents or subordinates."

See *Warner Valley Stock Co. v. Smith,* 165 U. S. 28, 41 L. Ed. 621, 17 S. Ct. 225; *Webster v. Fall,* 266 U. S. 507, 69 L. Ed. 411, 45 S. Ct. 148.

█ Article 2, § 26, of the state constitution provides that the legislature shall direct by law in what manner and in what courts suits may be brought against the state.

Rem. Rev. Stat., § 886 [P. C. § 6260], provides that persons having claims against the state shall have a right of action against the state in the superior court of Thurston county.

In the light of the above constitutional provision, the term "claim," as used in the statute, has the same meaning as the phrase "cause of action." *North-western etc. Bank v. State,* 18 Wash. 73, 50 Pac. 586, 42 L. R. A. 33; *Riddoch v. State,* 68 Wash. 329, 123 Pac. 450, Ann. Cas. 1913E, 1033, 42 L. R. A. (N. S.) 251.

While the present action in form is a suit against certain executive officers in their representative capacities, we are of the opinion that it is, in effect, a suit against the state. It is sought herein to obtain the right to examine all the records of respondents, which records, we believe, are state records under the social security act, and are not such records as Rem. Rev. Stat., § 4072 [P. C. § 1665], declares shall be open to inspection by the public.

While it is true the complaint makes some general

allegations of unlawful expenditure of public assistance funds by respondents, they are so general in their nature as to constitute little more than conclusions; and in any event, any funds expended must be considered as part of a fund to be used in administering the act, under the supervision of the director.

We think, clearly, an action to obtain the relief sought in the present action must be brought in Thurston county, and that § 886, *supra,* was passed, in part at least, to prevent a situation which might arise if actions such as the present one could be brought in any or all of the counties of the state. It might well be that such actions, if permitted, would seriously interfere with the administration of the social security act.

We are of the opinion that the case of *State ex rel. Robinson v. Superior Court,* 182 Wash. 277, 46 P. (2d) 1046, wherein the constitutionality of the 1935 agricultural adjustment act was questioned, is not applicable to the instant case. Neither do we believe the case of *State v. Superior Court for Walla Walla County,* 167 Wash. 334, 9 P. (2d) 70, sustains appellants' contention that the instant case was properly brought in Stevens county.

We think the case before us comes within the rule announced in *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108; *State ex rel. Pate v. Johns,* 170 Wash. 125, 15 P. (2d) 693; and *State ex rel. Shomaker v. Superior Court,* 193 Wash. 465, 76 P. (2d) 306.

For the reasons herein assigned, the demurrer was properly sustained.

The judgment is affirmed.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.